UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JUANITA FOSTER,** )<br>  )<br>  **Plaintiff,** )<br>  )<br> **vs.** )<br>  )<br>  )<br> **TARGET STORES, INC. and** )<br> **TARGET CORPORATION,** )<br>  )<br>  **Defendants.** ) | Civil Action Number<br>7:14-cv-01741-AKK |

## **MEMORANDUM OPINION**

Juanita Foster brings this case against Target Corporation alleging negligence and wantonness in violation of Alabama law as a result of her trip and fall in a Target parking lot. *See generally* doc. 11. Target now moves for summary judgment, doc. 25, which is fully briefed and ripe for review, *id.*; docs. 26; 30; 31. For the reasons outlined below, the court will grant Target's motion and will dismiss this case with prejudice.[1]

### I.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any

---

[1] Foster also brings claims against "Fictitious Defendants A-C and X-Z." *See generally* doc. 11. Because "[a]s a general matter, fictitious-party pleading is not permitted in federal court" and because Foster fails to describe these defendants at all, *see Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citations omitted)), the court **DISMISSES** claims against these defendants.

material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient

competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL ALLEGATIONS

At around 4:00 p.m. on January 19, 2013, Foster visited the Target located in Tuscaloosa, Alabama to return a coffeemaker. *See* docs. 25-1 at 19-20, 26; video 3:56:46- 4:17:04. Since the opening of the Tuscaloosa Target years earlier, Foster had regularly—sometimes twice a month or as often as once a week—visited this location to purchase household goods. *See* doc. 25-1 at 3, 19, 113-14. "[E]very time" she shopped at Target, Foster, who was aged 63 years at the time of the facts at issue here, parked in the handicapped parking area, as she has a difficult time walking long distances. *See* doc. 25-1 at 6, 9, 19. Each handicapped parking space

had an off-white or tan concrete wheel stop located at its front. *See* docs. 25-1 at 50, 92, 123; 30-3 at 2; video 3:56:47-4:17:40. The pavement in the parking lot was black. Doc. 25-4 at 50; video 3:56:47-4:17:40. Although she may not have paid close attention to them, Foster knew that the wheel stops were located at the front of each handicapped space. Doc. 25-1 at 53, 60. Non-handicapped parking spaces did not have wheel stops. Docs. 25-1 at 84-86; 30-3 at 2.

On the afternoon at issue, Foster parked her white Ford Edge in a handicapped parking space that had a designated walkway to the left of the parking space (i.e., next to the driver's side) and another handicapped parking space to the right (i.e., next to the passenger's side of the car). *See* docs. 25-1 at 19-21, 27-29, 32, 85-86, 92. Instead of exiting her vehicle immediately, Foster sat in the car for nearly twenty minutes to finish a phone conversation with her daughter. *See* doc. 25-1 at 26, 28-29, 51; video 3:56:46-4:16:24. During that time, multiple cars entered and exited the handicapped parking spaces around Foster, exposing the wheel stops at the front of the parking spaces as they departed. *See* doc. 25-1 at 26-27, 64-65, 70; video 3:59:53-4:00:16, 4:04:13-4:09:27, 4:11:36-4:12:46. While she was sitting in the car, Foster did not notice the wheel stops, including the one in her parking space, as she "had [her] mind on other things." Doc. 25-1 at 27, 53, 70-71.

After ending the conversation with her daughter, Foster exited her vehicle and encountered two stray carts which customers had abandoned in front of Foster's row of handicapped parking spaces and, in violation of Target protocol, employees had not placed in a designated cart area.[2] *Id.* at 27-28, 45; docs. 25-4 at 14; 32-19 at 7. Foster first moved towards the cart located in front of and to the left her vehicle. *See* doc. 25-1 at 45, 65; video 4:16:30-4:16:42. However, because that cart was dirty, Foster turned around, walked past the front of her car, and approached the second cart, which was located in front of and to the left of Foster's car. Doc. 25-1 at 65; video 4:16:42-4:16:52. The wheel stops for Foster's parking space and the space to the right of Foster's car were located between the second cart and the gap between Foster's car and her neighbor's car. Video 4:16:40-4:17:52. Foster avers that she paid no attention to the wheel stops as she approached the second cart. Doc. 25-1 at 65.

Despite the presence of a designated walkway next to the driver's side of her car, Foster attempted to pull her cart through the space between her car and her

---

[2] The Tuscaloosa Target has the biggest sales volume in its district. Doc. 25-4 at 14. Cart attendants are responsible for removing carts from the parking lot on an hourly basis. *Id.* at 15. Because of the volume of customers, especially on a busy Saturday afternoon such as the one at issue here, the store prioritizes the order in which cart attendants return abandoned carts to the cart corrals inside the store. *See id.* at 14-17. Cart attendants are instructed to consider the following carts a top priority: 1) carts in front of the store and blocking customers from entering the building; 2) carts parked behind a car such that a car may not see them and could back into them; and 3) carts that are protruding out of a cart corral and blocking traffic. *Id.* at 17. According to Target, the cart at issue in this case—which was abandoned in front of Foster's car—was not considered a top priority under these principles because it was not blocking a car, was not moving, and was easily seen. *Id.* at 20.

neighbor's car. Doc. 25-1 at 45-46, 66-67; video 4:16:52-4:17:00. As she attempted to do so, Foster, who was not looking at her feet as she walked, caught her foot on the wheel stop.[3] Doc. 25-1 at 52-53, 60-61; video 4:17:00-4:17:04. Specifically, Foster asserts that "[her] foot hit the curb which [she] couldn't see and did[ not] think was there." Doc. 25-1 at 53. Foster then lost her balance and fell, breaking her wrist and skinning her left knee.[4] Doc. 25-1 at 46-47.

Shortly after Foster's fall, Target remodeled the parking lot, including removing the wheel stops from the handicapped area. *See* docs. 25-1 at 20; 30-3 at 7. Target maintains that it had planned the parking lot remodel prior to Foster's fall. Docs. 30-3 at 7; 30-12 at 1-7. Since at least February 2010, Target has not placed wheel stops in any of its newly constructed parking lots. Doc. 30-3 at 10.

## III.   ANALYSIS

Foster asserts two claims in this case: negligence (Count I) and wantonness (Count II). *See generally* doc. 11 at 4-8. Specifically, she claims that Target violated Alabama law by maintaining a dangerous wheel stop in the handicapped parking area without appropriate warning or without providing enough space between wheel stops. *See id.* at 4-6. She claims that Target is wanton because the

---

[3] Foster acknowledges that the wheel stops "were where they were supposed to be" and in their normal positions. Doc. 25-1 at 53; *see also* doc. 25-4 at 53.

[4] Foster has abandoned her claim that this fall led to a macular tear in her left eye. *See* doc. 30 at 4 n.1.

corporation allegedly knowingly failed to properly construct, maintain, and clear the parking lot and because the corporation maintained reckless indifference to the safety of Foster and others. *See id.* at 6-8. For the reasons outlined more fully below, summary judgment is due to be granted as to these claims.

A. Negligence

"[T]he duty owed to [an invitee] by the [premises owner] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition." *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1055 (Ala. 2003) (internal quotations and citation omitted). Importantly, "[t]he owner of a premises . . . is not an insurer of the safety of his invitees," and "[t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Id.* (internal quotations and citations omitted). Dispositive here, "there is *no duty* on an owner of premises to warn an invitee of open and obvious defects in the premises of which the invitee is aware, or of which he should be aware in the exercise of reasonable care." *Hand v. Butts*, 270 So. 2d 789, 791 (Ala. 1972) (emphasis added); *see also Ex parte Mountain Top Indoor Flea Mkt.*, 699 So. 2d 158, 161 (Ala. 1997). Moreover:

> The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all

normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, *nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care*.

*Bogue v. R & M Grocery*, 553 So. 2d 545, 547 (Ala. 1989) (emphasis added) (quoting *Lamson & Sessions Bolt Co. v. McCarty*, 173 So. 388, 391 (Ala. 1937)); *Sheikh v. Lakeshore Found.*, 64 So. 3d 1055, 1058 (Ala. Civ. App. 2010) (same); *Wallace v. Tri-State Motor Transit Co.*, 741 F.2d 375, 377 (11th Cir. 1984) (same). In Alabama, courts "use an objective standard to assess whether a hazard is open and obvious." *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 741-42 (Ala. 2009) (internal quotations and citations omitted). "[T]he question is whether the danger *should have been observed*, not whether it was consciously appreciated." *Id.* at 742 (emphasis added). Significantly, at the summary judgment stage, when the hazard is open and obvious, "*the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap*." *Sessions v. Nonnenmann*, 842 So. 2d 649, 653-54 (Ala. 2002) (emphasis in original).

The facts at hand compel a grant of summary judgment because the wheel stop was an open and obvious hazard. Indeed, the facts establish that the light grey wheel stops contrasted with the black pavement in the parking lot and that Foster had visited the Target store many times before, regularly parked in the

handicapped parking spaces, and knew the wheel stops existed. *Gable v. Shoney's Inc.*, which Target references, is illustrative here because, in that case, a plaintiff advanced a negligence claim after she tripped over a wheel stop in a restaurant parking lot one evening. *See* 663 So. 2d 928, 928 (Ala. 1995). In affirming the trial court's grant of summary judgment, the Alabama Supreme Court found significant that the plaintiff "had parked in the same area on other occasions," "was aware of the [wheel] blocks in the parking lot," "had seen the same kind of [wheel] blocks at other restaurants," and "knew of the need to watch out for and step over or walk around the [wheel] blocks." *See id.* at 929. The court finds the same facts dispositive here. Moreover, that Foster's car allegedly covered the wheel stop for her parking space does not negate this finding, as Foster testified that she knew the wheel stop was there, and, even if she did not, she could reasonably be expected to have seen the wheel stop when initially parking her car or reasonably inferred that one existed when sitting in her car for nearly twenty minutes while other cars pulled out of the parking spaces and exposed those wheel stops.[5] Additionally, had Foster been exercising reasonable care, she would have looked down and seen the wheel stop as she attempted to navigate the cart between the cars. On such facts, then, the court finds that Foster has "simply presented no evidence that the [wheel]

---

[5] The handicapped space directly across from Foster and to her left actually remained empty—and the wheel stop remained exposed—for five minutes while Foster was sitting in her car. *See* video 4:04:13-4:09:27.

block was a hidden defect that [she] did not know of and would not discover in the exercise of ordinary care." *See id.*

As such, Target cannot be held liable on the basis of negligence for Foster's injury due to the wheel stop, and this claim is due to be dismissed.[6] The court will

---

[6] Even under Foster's argument that some Alabama Supreme Court cases require that "the undisputed evidence show[] that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger," *see* doc. 30 at 5-8; *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463 (Ala. 1993) (quoting *Harvell v. Johnson*, 598 So. 2d 881, 883 (Ala. 1992)), summary judgment is due to be granted. First, the cases that Foster cites to outline this standard, *Harding*, 628 So. 2d at 463 (1993 case applying aforementioned standard); *Harvell*, 598 So.3d at 883 (1992 case applying aforementioned standard), present an aberration from Alabama Supreme Court's earlier and recent case law, *see Lamson & Sessions Bolt Co.*, 174 So. at 391 (1937 case outlining that whether a condition is open and obvious is an objective test); *McClendon v. Mountain Top Indoor Flea Mkt*, 601 So. 2d 957 (Ala. 1992) (1992 case relying on *Lamson & Sessions Bolt Co.*'s objective test); *Ex parte Neese*, 819 So. 2d 584 (2001 case relying on same); *Ex parte Howard*, 920 So. 2d 553, 557 (Ala. 2005) (2005 case relying on same); *Dolgencorp, Inc.*, 28 So. 3d at 741-42 (2009 case applying objective test for openness and obviousness). Second, to the extent that Foster argues that a jury should determine whether she "knew" of the wheel stop and the risk it presented, s*ee Terry v. Life Ins. Co. of Ga.*, 551 So. 2d 385, 386-87 (Ala. 1989) (noting that, to be "known" a plaintiff must be aware of the existence of the condition and the danger it involves); *Howard v. Andy's Store for Men*, 757 So. 2d 2108, 2012 (Ala. Civ. App. 2000) (observing that "[t]he plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury") (internal quotations and citation omitted), the court finds otherwise. Foster has acknowledged that she knew the wheel stops were in the handicapped parking lot. Therefore, she was admittedly aware of the existence of the condition that caused her injury. Although Foster variously alleges that she tripped on a wheel stop she "could not see" because she was not paying attention or was not looking down as she was walking, her argument runs counter to common sense. "While it is true that a defect is not 'known' as a matter of law if [Foster] does not appreciate its danger, such appreciation does not require specialized knowledge or a sophisticated thought process when the danger is an everyday obstacle lying on the ground." *See Blalock v. Wal-Mart Stores East, LP*, Civil Action No. 1:06cv381-MHT (WO), 2007 WL 14121445, at *2 (M.D. Ala. May 11, 2007). In other words, no reasonable factfinder could conclude that, even though Foster knew the wheel stops were there, she did not recognize that they may pose a trip-and-fall risk. *See id.*; *see also Ex parte Bennett*, 426 So. 2d 832, 835 (Ala. 1982) (affirming judgment for the defendant where the plaintiff testified that she saw the concrete wheel stops in the parking lot prior to tripping over them). Put simply, while Foster may not have been paying attention to where she was walking or may have had her mind on other things as she passed the wheel stop, that does not justify shifting the cost of her accident to Target. *See Blalock*, 2007 WL 14121445, at *3 ("Once [the plaintiff]

not address Foster's arguments regarding contributory negligence, *see* doc. 30 at 8-12, as the determination that Target owed her no duty regarding the wheel stops proves dispositive of Foster's negligence claim.

### B. Wantonness

Foster also alleges a claim for wantonness,[7] arguing that Target operates with reckless disregard to the fact that customers abandon carts in the space in front of handicapped spaces, that customers then retrieve carts from this improper area, and that patrons pull the carts between the wheel stops and the wheel stops. *See* doc. 30 at 13-14. However, when, as here, a court finds that a defendant "owed no duty to [a plaintiff for her negligence claim because the hazard was open and obvious], her wantonness claim must also fail as a matter of law." *Dolgencorp*, 28 So. 3d at 746 (relying on *Lilya*, 855 So. 2d at 1056) (additional citations omitted). Therefore, in light of the court's finding that Target owed Foster no duty as to the wheel stops on her negligence claim, the court similarly finds that Foster's

---

became aware of the wooden pallet on the ground near her feet, she took on the risks and responsibilities associated with walking in its vicinity, including the risk that she would forget about the pallet during a subsequent conversation and then trip over it as she spun around to return to her vehicle.").

[7] Wantonness is "the conscious doing of some act or the omission of some *duty*, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Dolgencorp*, 28 So. 3d at 745 (emphasis in original) (quoting *Bozeman v. Cen. Bank of the S.*, 646 So. 2d 601, 603 (Ala. 1994) (internal quotations and additional citations omitted)).

wantonness claim must fail for want of a duty because the wheel stops were open and obvious. *See id.* at 746.

## CONCLUSION

For the reasons outlined above, Target's motion for summary judgment as to Foster's negligence and wantonness claims, doc. 25, is due to be granted.

**DONE** the 31st day of May, 2016.

                                                    **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE